UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CATHERN ALBERT,

        Plaintiff,

v.                                                          Case No. 8:20-cv-1682-AEP

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,[1]

        Defendant.
_____/

**<u>ORDER</u>**

Plaintiff seeks judicial review of the denial of her claim for a period of disability, disability insurance benefits ("DIB"). As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed employ proper legal standards, the Commissioner's decision is affirmed.

**I.**

**A.     Procedural Background**

Plaintiff filed an application for a period of disability and DIB (Tr. 212-14). The Social Security Administration ("SSA") denied Plaintiff's claims both initially and upon reconsideration (Tr. 77-107). Thereafter, Plaintiff requested an administrative hearing (Tr. 120-21). Per Plaintiff's request, the ALJ held a hearing

---

[1] Dr. Kilolo Kijakazi is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Acting Commissioner Kilolo Kijakazi should be substituted for Commissioner Andrew M. Saul as the defendant in this matter. No further action needs to be taken to continue this matter by reason of the last sentence of section 205(g) of the Social Security Act. 42 U.S.C. § 405(g).

at which Plaintiff appeared and testified (Tr. 38-74). Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits (Tr. 20-37). Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 4-9). Plaintiff then timely filed a complaint with this Court (Doc. 1). The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

**B.     Factual Background and the ALJ's Decision**

Plaintiff, who was born in 1965, claimed disability beginning September 15, 2017 (Tr. 23, 77-78). Plaintiff obtained a high school education (Tr. 82, 96). Plaintiff's past relevant work experience included work as an accounting clerk and retail store cashier (Tr. 32). Plaintiff alleged disability due to back pain, depression, high cholesterol, and stomach problems (Tr. 257).

In rendering the administrative decision, the ALJ concluded that Plaintiff met the insured status requirements through December 31, 2021 and had not engaged in substantial gainful activity since September 15, 2017, the alleged onset date (Tr. 25). After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments: degenerative joint disease – lumbar spine; grade I anterior listhesis – L4-5; status post L4-5 fusion; and carpel tunnel syndrome (Tr. 25). Notwithstanding the noted impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 27). The ALJ then concluded that Plaintiff retained a

residual functional capacity ("RFC") to perform light work except that she could occasionally push and pull with the bilateral upper extremities and right lower extremities; postural activity was limited to occasional, but she could never climb ladders, ropes, or scaffolds; handling and fingering bilaterally was limited to frequent; and she could tolerate no more than occasional exposure to extreme cold, humidity, vibration and workplace hazards such as unprotected heights and moving machinery (Tr. 28). In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 28-31).

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), the ALJ determined Plaintiff could perform her past relevant work (Tr. 32). Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as an accounting clerk and cashier II position in a lumbar store or in a convenience store, but only as generally performed (Tr. 68-69). Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (Tr. 32).

**II.**

To be entitled to benefits, a claimant must be disabled, meaning he or she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3).

To regularize the adjudicative process, the SSA promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 404.1520. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a). Under this process, the ALJ must determine, in sequence, the following:  whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work. 20 C.F.R. § 404.1520(a)(4). If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). A claimant is

entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. § 404.1520(g)(1).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation and internal quotation marks omitted). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citations omitted).

In reviewing the Commissioner's decision, the court may not reweigh the evidence or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Winschel*, 631 F.3d at 1178 (citations omitted); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Ingram*, 496 F.3d at 1260 (citation omitted). The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (*per curiam*) (citations omitted).

## III.

Plaintiff argues that the ALJ erred by (1) failing to adequately evaluate Plaintiff's treating physician's opinion, (2) determining that Plaintiff's back impairment did not meet listing 1.04, and (3) determining that Plaintiff's mental impairment was non-severe. For the following reasons, the ALJ applied the correct legal standards, and the ALJ's decision is supported by substantial evidence.

### A.    Medical Opinion

Plaintiff argues that the ALJ improperly assessed the opinion evidence of record, particularly that of Plaintiff's treating physician, Dr. Luis Herrera Behr. Dr. Herrera Behr treated Plaintiff on multiple occasions between June 6, 2016 to April 18, 2019 (Tr. 628, 853). On February 20, 2018, Dr. Herrera Behr completed a physical assessment of the Plaintiff and listed her diagnosis as "lower back pain" (Tr. 656). According to Dr. Herrera Behr, Plaintiff experienced "foggy thinking" as a side effect of medications that could impact her capacity to work, and opined that her symptoms associated with her impairments were severe enough to constantly interfere with the attention and concentration required to perform simple work-related tasks (Tr. 656). Dr. Herrera Behr also opined that Plaintiff would need to recline or lie down during an 8-hour workday in excess of normal breaks; she could sit or stand and walk for only one hour in a workday; she could never lift or carry less than 10 pounds; she could use her hands (grasp, turn, twist objects) or fingers (fine manipulation) 0% of the time during an 8-hour workday; and could use each arm (reaching) 50% of the time during an 8-hour workday (Tr. 656). Dr. Herrera

Behr also opined that Plaintiff would likely be absent from work more than four times a month (Tr. 657). Dr. Herrera Behr also completed a mental capacity assessment which noted mild-to-moderate limitations to understanding, remembering or applying information; some mild-to-moderate limitations in concentration, persistence, or maintaining pace; and mostly moderate limitations in adapting or managing oneself.  (Tr. 658-59). Three months later, Dr. Herrera Behr conducted another physical assessment, where he listed "severe lower back pain/right carpel tunnel" as Plaintiff's diagnosis (Tr. 906). Dr. Herrera Behr opined that Plaintiff would need to recline or lie down during an 8-hour workday in excess of normal breaks and she could not sit, stand, or walk in a workday, and she could not stand or walk in a workday (Tr. 906). According to Dr. Herrera Behr, Plaintiff could never lift or carry less than 10 pounds and she would likely be absent from work more than 4 times a month (Tr. 906-07). In this assessment, however, Dr. Herrera Behr opined that she could use her right hand (grasp, turn, twist objects) and fingers (fine manipulation) 30% of the time during an 8-hour workday and could use her left hand and fingers 100% of the time during an 8-hour workday, and could also use her arms (reaching) 100% of the time during an 8-hour workday (Tr. 906).

In considering Dr. Herrera Behr's opinion, the ALJ found Dr. Herrera Behr's opinion "not persuasive because they [were] not consistent or supported by the record" (Tr. 31). The ALJ explained that Dr. Herrera Behr's opinion was conclusory and he provided very little explanation of the evidence relied on in

forming his opinion (Tr. 31). The ALJ noted that for instance, Dr. Herrera Behr found that Plaintiff had extreme limitations in the ability to sit, stand or walk in a workday, but the objective findings showed that Plaintiff had normal findings of gait and station (Tr. 31).

Plaintiff contends that the ALJ failed to afford adequate weight to Dr. Herrera Behr's opinion and that the opinion of non-treating physicians did not amount to substantial evidence when weighed against Dr. Herrera Behr's opinion as a treating physician and the findings of several other treating physicians that Plaintiff had substantial limitations in her ability to walk and stand.

When assessing the medical evidence, the ALJ may reject any opinion when the evidence supports a contrary conclusion. *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam) (citation omitted). A reviewing court will not second guess an ALJ's decision regarding the weight to afford a medical opinion, so long as the ALJ articulates a specific justification for the decision. *See Hunter v. Soc. Sec. Admin. Comm'r,* 808 F.3d 818, 823 (11th Cir. 2015). Previously, an ALJ was required to afford the testimony of a treating physician substantial or considerable weight unless "good cause" was shown to the contrary. *Winschel*, 631 F.3d at 1179; *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (per curiam) (citation omitted). However, claims filed on or after March 27, 2017 are governed by a new regulation applying a modified standard for the handling of opinions from treating physicians. *See* 20 C.F.R. § 404.1520c; *see also Schink v. Comm'r of Soc Sec.*, 935 F.3d 1245, 1259 n.4 (11th Cir. 2019). Of note, the new regulations remove the

"controlling weight" requirement when considering the opinions of treating physicians for applications submitted on or after March 27, 2017. *See* 20 C.F.R. § 404.1520c(a); *Yanes v. Comm'r of Soc. Sec.*, No. 20-14233, 2021 WL 2982084, at *5 n.9 (11th Cir. July 15, 2021). Because Plaintiff submitted her application for benefits on January 19, 2018 (Tr. 212-14), the new regulation applies.

Namely, under 20 C.F.R. § 404.1520c, an ALJ will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion or prior administrative finding, including from a claimant's medical source. 20 C.F.R. § 404.1520c(a). "When a medical source provides one or more medical opinions," those opinions will be considered "together in a single analysis," using the factors listed in 20 C.F.R. § 404.1520c(c)(1) through (c)(5), as appropriate. 20 C.F.R. § 404.1520c(a), (b)(1). These factors are as follows: whether an opinion is well-supported, whether an opinion is consistent with the record, the treatment relationship between the medical source and the claimant, the area of the medical source's specialization, and other factors that tend to support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. § 404.1520c(c)(1)-(5). The ALJ is "not required to articulate how [he/she] considered each medical opinion from one medical source individually." 20 C.F.R. § 404.1520c(b)(1). The primary factors an ALJ will consider when evaluating the persuasiveness of a medical opinion are supportability and consistency. 20 C.F.R. § 404.1520c(a) & (b)(2). Specifically, the more a medical source presents objective medical evidence and supporting explanations to support the opinion, the more

persuasive the medical opinion will be. 20 C.F.R. § 404.1520c(c)(1). Further, the more consistent the medical opinion is with the evidence from other medical sources and nonmedical sources, the more persuasive the medical opinion will be. 20 C.F.R. § 404.1520c(c)(2). Beyond supportability and consistency, an ALJ may also consider the relationship the medical source maintains with the claimant, including the length of the treatment relationship, the frequency of examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and whether the medical source examined the claimant, in addition to other factors. 20 C.F.R. § 404.1520c(c)(3)(i)-(v) & (5).

Here, substantial evidence supports the ALJ's conclusion that Dr. Herrera Behr's medical opinion was unpersuasive. Upon consideration of Dr. Herrera Behr's medical opinion, the ALJ found that it was not consistent or supported by the record (Tr. 31). The ALJ articulated several reasons for finding Dr. Herrera Behr's opinion unpersuasive – mainly, the ALJ concluded that Dr. Herrera Behr offered little explanation of the evidence relied on in forming his opinion and that his opinion did not comport with the overall objective medical evidence (Tr. 31). Dr. Herrera Behr's opinions after the assessments conducted within three months of each other showed significant inconsistencies. For example, in February, Dr. Herrera Behr opined that Plaintiff could sit or stand for only one hour in a workday and walk for only one hour in a workday, however in May, Dr. Herrera Behr opined that Plaintiff could not sit, stand, or walk in a workday (Tr. 656, 906). In February, Dr. Herrera Behr opined that Plaintiff could use her hands (grasp, turn, twist

objects) or fingers (fine manipulation) 0% of the time during an 8-hour workday; and could use each arm (reaching) 50% of the time during an 8-hour workday (Tr. 656). However, in May, Dr. Herrera Behr opined that Plaintiff could use her right hand (grasp, turn, twist objects) and fingers (fine manipulation) 30% of the time during an 8-hour workday, could use her left hand and fingers 100% of the time during an 8-hour workday, and could use her arms (reaching) 100% of the time during an 8-hour workday (Tr. 906). As the ALJ noted, Dr. Herrera Behr's opinions were not only inconsistent, but they also lacked support from the record. Dr. Herrera Behr opined that Plaintiff had limitations in her ability to stand and walk, however in visits to multiple providers, including Dr. Herrera Behr, Plaintiff showed normal ambulation, normal gait and station (Tr. 432, 441, 444, 494, 497, 709, 718, 732, 740-41, 753, 875, 912, 935). Furthermore, office visit notes by Dr. Herrera Behr from April 2019 and May 2019 note that Plaintiff walks for exercise (Tr. 873, 911). Moreover, Plaintiff testified that she could only walk a short distance, but she did not use an assistive device, like a cane or walker (Tr. 58).

The ALJ noted that Plaintiff underwent surgery for the alleged impairment, which suggested that her symptoms were genuine, however, the ALJ found that the record reflected that the surgery was generally successful in relieving the symptoms (Tr. 30). The ALJ also found that the "facts in the record do not dispute that the claimant has conditions, which singly or in combination, may cause her pain and other difficulty" however, "[w]hat these pieces of evidence suggest is that the claimant's symptoms may not be accurately reported, may not exist at the level of

severity assumed by the claimant's testimony at hearing and may have other mitigating factors against their negative impact on the claimant's ability to engage in work activity" (Tr. 30). The ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, however, her statements concerning the intensity, persistence and limiting effects of these symptoms were not "entirely consistent with the medical evidence and other evidence in the record" (Tr. 30).

Plaintiff also argues that the ALJ gave greater weight to the opinion of Dr. Kenneth Iverson, the state agency medical consultant, although he never examined Plaintiff. However, an ALJ is permitted to consider the medical opinions of one-time evaluators "when [the opinions] are supported by other evidence in the record." *Borges v. Comm'r of Soc. Sec.*, 771 F. App'x 878, 881 (11th Cir. 2019) (*citing Crawford*, 363 F.3d at 1160). Additionally, under the new regulations an ALJ is not required to explain consideration of the medical source's treatment relationship with the claimant. *See* 20 C.F.R. § 404.1520c(b)(2). In reviewing Dr. Iverson's opinion, the ALJ concluded that it was moderately consistent with Plaintiff's overall treatment history (Tr. 31). Notwithstanding, the ALJ found greater limitations than those found by Dr. Iverson as it related to Plaintiff's handling and fingering and to her ability to climb ladders, ropes and scaffolds, due to her carpal tunnel syndrome (Tr. 31).

Although Plaintiff's contention that there are references in the record regarding her antalgic gait and difficulty walking is accurate (*see* Tr. 406, 415, 423,

468, 477, 485, 689, 697, 724, 739, 742, 746, 849), this Court is not in a position to reweigh the evidence or substitute its own judgment for that of the ALJ, even if it found that the evidence preponderates against the ALJ's decision. *See Winschel*, 631 F.3d at 1178 (citations omitted). As previously discussed, the ALJ properly considered Dr. Herrera Behr's opinions and Dr. Iverson's evaluation in the context of the record as a whole and the ALJ's conclusion that Dr. Herrera Behr's medical opinion was unpersuasive is supported by substantial evidence.

**B.    Listing 1.04**

Plaintiff argues that the ALJ erred by failing to properly evaluate whether her back impairment met or equaled an impairment listed in the Listing of Impairments ("Listing"). At step three of the sequential evaluation process, the ALJ must determine whether the Plaintiff's impairments meet or equal an impairment listed in the Listing. *See* 20 C.F.R. § 404.1520(a)(4)(iii); *see also* 20 C.F.R. pt. 404, subpt. P, app. 1. "The Listing of Impairments describes, for each of the major body systems, impairments which are considered severe enough to prevent a person from doing any gainful activity." *Wilson*, 284 F.3d at 1224 (citations omitted).

As the Supreme Court has explained, the level of severity required to meet or equal a listed impairment is higher than that needed to meet or equal the statutory standard for disability. *Sullivan v. Zebley*, 493 U.S. 521, 532, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990). That is, if the claimant's impairment meets or equals the severity of the specified impairments in the Listing, "the Commissioner considers him to be disabled without regard to his age, education, or work experience, and he

is entitled to benefits; if not, the Commissioner takes those factors into account. *Carpenter v. Comm'r of Soc. Sec.*, 614 F. App'x 482, 486 (11th Cir. 2015). The Listings operate as a presumption of disability. *Sullivan*, 493 U.S. at 532.

At step three, the burden is on the claimant to prove that her impairment meets or equals a listed impairment. *Bowen*, 482 U.S. at 146. "To 'meet' a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement." *Wilson*, 284 F.3d at 1224 (citing 20 C.F.R. § 404.1525(a)-(d)). To show that her impairment matches a listing, a claimant must meet *all* of the specified medical criteria. *Sullivan*, 493 U.S. at 530. "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id.* "To 'equal' a Listing, the medical findings must be 'at least equal in severity and duration to the listed findings.'" *Wilson*, 284 F.3d at 1224 (citing 20 C.F.R. § 404.1526(a)).

Here, at step three of the sequential evaluation process, the ALJ concluded that the severity of Plaintiff's impairments, either singly or in combination, did not meet or equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 28). In making this finding, the ALJ stated:

> [N]o acceptable medical source has mentioned findings equivalent in severity to the criteria of any listed impairment, individually or in combination; no State agency reviewer, consultant, or examiner has concluded that the claimant has an impairment(s) severe enough to meet or equal a listing. No treating physician has concluded with evidentiary support that the claimant has an impairment or combination thereof severe enough to meet or equal a listing. Consequently, I find that the medical evidence fails to document the presence of listing level severity.


(Tr. 28).

Listing 1.04 provides the criteria for disorders of the spine resulting in compromise of a nerve root or the spinal cord, and it states:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
>
> or
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
>
> or
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04. The regulations explain that an inability to ambulate means:

> an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00B(2)(b)(2).

Plaintiff contends that the ALJ erred at step three by failing to evaluate properly whether Plaintiff's severe impairment of degenerative disc disease met or medically equaled Social Security Listing 1.04, Disorders of the Spine because Plaintiff had spinal stenosis, nerve root compression, limitation of motion established by straight leg tests, and alternatively, lumbar spinal stenosis, leg pain resulting from nerve impingement, resulting in her inability to ambulate effectively. However, Plaintiff's evidence pertaining to the Listing 1.04 criteria is lacking. Plaintiff's spine MRI from June 6, 2017, showed disc bulging and disc protrusions, but without any stenosis (Tr. 29, 392). In January 2019, MRI findings show that she developed lumbar spinal stenosis and neural foraminal stenosis (nerve root compression) (Tr. 30, 673-74). Notwithstanding, the medical records do not show the additional required criteria under A and C of Listing 1.04.

Under criteria A, Plaintiff did not display "motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss." To the contrary, the record evidence indicates that Plaintiff did not have motor loss accompanied by sensory or reflex loss (*see* Tr. 779, 783, 786, 789, 796, 800, 804, 807, 811, 815, 819, 823, 827, 831,  924 (sensory intact); 496, 504-05, 551, 555, 565, 570, 604, 708 (sensation intact) 425-26, 555, 565, 570, 599, 604 (reflexes intact)). Moreover, Plaintiff cites to record evidence of positive straight leg raise tests, however, those test results do not specify whether the tests were conducted in sitting or supine positions (Tr. 779, 789).

Under criteria C, examples of ineffective ambulation include but are not limited to:

> the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00B(2)(b)(2). Plaintiff's medical records often show that her ambulation and gait were normal (Tr. 432, 441, 444, 497, 732, 753). The records demonstrating an antalgic ambulation do not describe the abnormality or the degree in which it would impact Plaintiff's ability to walk at a reasonable pace for at least a block (Tr. 485, 697, 739, 742, 746). Additionally, Plaintiff's leg strengths was consistently reported as 5/5 (Tr. 433, 442, 724-25, 739-40).[2] Moreover, at the hearing Plaintiff testified that she still went grocery shopping and tried not to use the motorized chairs at the grocery store (Tr. 61-62). Thus, the evidence on which Plaintiff relies is insufficient to satisfy all of the criteria for Listing 1.04. Even though the Plaintiff presented some evidence demonstrating aspects of Listing 1.04, "[a]n impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan*, 493 U.S. at 530. Accordingly, the ALJ's decision that Plaintiff's impairments do not meet or equal a listing is supported by substantial evidence.

---

[2] There is one occurrence of a 4/5 reported strength in September 2017 (Tr. 424), and one occurrence of a 3/5 reported strength in December 2018 (Tr. 747).

### C.   Mental Impairments

Plaintiff argues that The ALJ erred by failing to find that her mental impairments were severe. At step two of the sequential analysis, the ALJ considers the medical severity of a claimant's impairments. 20 C.F.R. § 404.1520(a)(4)(ii). Step two operates as a threshold inquiry. *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986); *see also Gray v. Comm'r of Soc. Sec.*, 550 F. App'x 850, 853 (11th Cir. 2013) (per curiam). At step two, a claimant must show that he or she suffers from an impairment or combination of impairments that significantly limits his or her physical or mental ability to do basic work activities. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1521, 404.1522(a). A claimant need show only that his or her impairment is not so slight, and its effect is not so minimal, that it would clearly not be expected to interfere with his or her ability to work. *McDaniel*, 800 F.2d at 1031; *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984) (per curiam). "[T]he 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986). In other words, an impairment or combination of impairments is not considered severe where it does not significantly limit the claimant's physical or mental ability to perform basic work activities. 20 C.F.R. § 404.1522; *Turner v. Comm'r of Soc. Sec.*, 182 F. App'x 946, 948 (11th Cir. 2006) (per curiam) (citations omitted).

Here, in evaluating Plaintiff's mental conditions, the ALJ rated Plaintiff's degree of limitation in the four broad functional areas of the paragraph B criteria used in evaluating mental disorders under the Listing of Impairments (Tr. 26-27). The ALJ found that Plaintiff's mental impairments of adjustment disorder with anxiety and depressed mood and major depressive disorder, considered singly and in combination, did not cause more than minimal limitations in her ability to perform basic mental work activities (Tr. 26). The ALJ rated Plaintiff as having no limitations in understanding, remembering, or applying information; in interacting with others; in concentrating, persisting or maintaining pace; and in adapting or managing oneself (Tr. 27). Thus, the ALJ determined Plaintiff's depression and anxiety were non-severe impairments (Tr. 27). Plaintiff contends that she had a diagnosis of mental impairments which Dr. Herrera Behr described as uncontrolled on multiple occasions, including opining that she had moderate mental limitations in the Mental Capacity Assessment he completed for Plaintiff. Plaintiff also contends that the ALJ improperly relied on the state agency psychologists' opinions. Notwithstanding, substantial evidence supports the ALJ's finding that Plaintiff's mental impairments were not severe.

As the ALJ noted, Plaintiff's mental status exams were often unremarkable, including displaying normal mood and affect, good judgment, clear speech, and normal thought content (Tr. 423, 432, 440, 532, 551, 555, 565, 570, 604, 723, 731, 738, 746, 753, 780, 784, 786-87, 789, 792, 796, 800, 804, 808, 811, 816, 820, 823, 827, 831, 875, 916, 935). The ALJ also noted that Plaintiff only  mentioned physical

limitations with respect to her ability to perform activities such as washing dishes or grocery shopping (Tr. 57-58, 61-62). Plaintiff's testimony that she lived with her husband and that her neighbor helped her with chores evidenced that she was capable of maintaining relationships (Tr. 45, 61-63). The findings of the state agency psychological consultants also support the ALJ's determination (Tr. 77-88, 91-99).

Although Dr. Herrera Behr completed a mental capacity assessment which noted that Plaintiff had moderate limitations in ten of the seventeen areas of mental functioning, as discussed above, the ALJ did not err in finding Dr. Herrera Behr's opinion not persuasive (Tr. 658-59). Moreover, Dr. Herrera Behr's own clinical notes state that Plaintiff showed intact memory, judgment, normal mood and affect, and spoke at a normal rate and tone during her visits (Tr. 875)

Even if the ALJ did err—which she did not—in finding Plaintiff's mental impairments to be non-severe, such error is harmless since the ALJ found other severe impairments at step two and considered all impairments at the later steps of the sequential evaluation. The finding of *any* severe impairment, whether it results from a single severe impairment or a combination or impairments that together qualify as severe, is enough to satisfy step two. *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) (citations omitted); *see also Packer v. Comm'r, Soc. Sec. Admin.*, 542 F. App'x 890, 892 (11th Cir. 2013) (per curiam) ("[T]he ALJ determined at step two that at least one severe impairment existed; the threshold inquiry at step two therefore was satisfied."); *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 824-25 (11th Cir. 2010) (per curiam) (noting that an ALJ's failure to identify an impairment

as severe, where the ALJ found that the plaintiff suffered from at least one severe impairment, constituted harmless error and was, in fact, sufficient to meet the requirements of step two, and additionally noting that nothing requires the ALJ to identify, at step two, all of the impairments that could be considered severe). However, because substantial evidence supports the ALJ's finding that Plaintiff's mental impairments were not severe, the Court need not address the harmless error analysis.

<div align="center">

**IV.**

</div>

Accordingly, after consideration, it is hereby

ORDERED:

1.  The decision of the Commissioner is AFFIRMED.

2.  The Clerk is directed to enter final judgment in favor of the Commissioner and close the case.

DONE AND ORDERED in Tampa, Florida, on this 28th day of March, 2022.

_____
ANTHONY E. PORCELLI
United States Magistrate Judge

cc:  Counsel of Record